UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WINNEBAGO APARTMENT
ASSOCIATION, INC.,
DISCOVERY PROPERTIES, LLC,
MIDWEST REALTY MANAGEMENT, INC.,        Case No. 17-C-154
SCHWAB PROPERTIES, LLC,
ULTIMATE PROPERTIES, LLC,
DONN LORD, JORDAN HANSEN, LYN
KOLF, ALEX OBERTHALER, and
AUSTIN VIKE,

               Plaintiffs,

v.

CITY OF OSHKOSH, CITY OF OSHKOSH
COMMON COUNCIL, and JOHN ZARATE,

               Defendants.

## DEFENDANTS' RESPONSE BRIEF IN OPPOSITION OF
## PLAINTIFFS' MOTION FOR TEMPORARY INJUNCTION

City of Oshkosh, City of Oshkosh Common Council and John Zarate, through their legal counsel, Arenz, Molter, Macy, Riffle & Larson, S.C., submit the following brief in opposition to plaintiffs' Motion for a Temporary Injunction. Because plaintiffs fail to show, or even attempt to show, that the plaintiffs have met the requisite burden of persuasion entitling them to the requested preliminary injunction, plaintiffs' motion must be denied.

### BACKGROUND

The City of Oshkosh Common Council is empowered by Wisconsin Statutes Section 62.11 (5) to act for the health, safety, and welfare of the public. This power must be liberally construed per Wisconsin Statutes Section 62.04 "to promote the general welfare, peace, good order and

prosperity of such cities and the inhabitants thereof." On or about September 13, 2016, the Common Council made the following findings, in adopting the ordinance that is the subject of the Plaintiff's complaint:

> The Oshkosh Common Council finds that it is necessary to establish a program of regularly scheduled, systematic, city-wide program for the registration and inspection of residential rental dwelling units in the city to ensure that those units provide safe, decent and sanitary living conditions for tenants living in the residential dwelling unit and to prevent further deterioration of those units. The Common Council finds that a significant percentage of code complaints and violations occur at residential rental dwelling units and that the conditions which exist at these units adversely affect the neighbors and neighborhoods in which they are located. This ordinance is enacted to encourage property owners who own and operate residential dwelling units to exercise their responsibility to ensure that the city ordinances governing the condition and maintenance of residential dwelling units are followed to protect the health, safety and welfare of the public and prevent blighted conditions in city neighborhoods. (Section 16-47, Oshkosh Municipal Code.)

Upon consideration of and in response to these health, safety and welfare concerns, the City adopted Chapter 16, Division 6 of the City of Oshkosh municipal code, to require that residential rental property be inspected for basic code compliance.

Shortly after adopting the ordinance, the City of Oshkosh Common Council further specified implementation of the inspection program, in Resolution 16-489, adopted October 11, 2016 (copy attached as Exhibit 01). This resolution describes the specific issues to be inspected, and the applicable fees. All of the issues to be inspected directly relate to health, safety and welfare. For example, the inspection will determine whether the property has functioning smoke detectors and carbon monoxide detectors, and whether there are any apparent gas leaks, each of which relate to very significant health risks.[1] Other issues for inspection include proper venting

---

[1] In 2015 there were 95,000 apartment fires in the U.S, resulting in 405 civilian deaths, 3,025 civilian injuries, and direct property damage of $1,161,000,000. ("Fire Loss in the United States" 2015, Hylton J.G Haynes, NFPA, September 2016.) In the years 2009 to 2013, three of every five home fire deaths resulted from fires in homes with no smoke alarms (38%) or no working smoke alarms (21%). ("Smoke

of gases, plumbing leaks, exposed electrical wiring, rodent or insect infestation, functional furnace, structurally sound hand rails, etc. The entire list of items fits on one page, just 24 interior items and 6 exterior items. The list speaks for itself as being directly related to significant health, safety and welfare risks.

# ARGUMENT

## I. Plaintiffs Fail to Carry Their Burden of Persuasion.

Plaintiffs filed their motion on January 25, 2017 seeking "*entry of a temporary injunction enjoining Defendants from implementing and enforcing the Ordinance ... pending the disposition of this action on the merits*." Plaintiffs specifically seek a preliminary injunction requiring the City to postpone any potential enforcement or application of Chapter 16, Division 6 of the City of Oshkosh municipal code.

The applicable standard for considering Plaintiff's motion is well described by the Seventh Circuit:

> *In assessing whether a preliminary injunction is warranted, a court must consider whether the party seeking the injunction has demonstrated that: 1) it has a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law exists; 3) it will suffer irreparable harm if the preliminary injunction is denied; 4) the irreparable harm the party will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and 5) the preliminary injunction will not harm the public interest.* (Kiel v. City of Kenosha, 236 F.3d 814, 815–16 (7th Cir. 2000).)

We will consider these elements in turn, with a significant focus on the first element.

---

Alarms In U.S. Home Fires Fact Sheet," NFPA, 2013). During 2006-2010, municipal fire departments responded to an annual average of 72,000 carbon monoxide incidents. ("Non-Fire Carbon Monoxide Incidents," Evarts, NFPA, March 2013.) In 2009, 784 people died of unintentional injuries due to non-fire exposure to gases. Anoxia, which is injury involving oxygen deprivation, accounted for 33,600 injuries reported to hospital emergency rooms in 2012, including 16,800 with no fire involvement. "Deaths and Injuries Due to Non-Fire Exposure to Gases," J.R. Hall, Jr., NFPA, September 2013.)

1. <u>Plaintiffs will not succeed on the merits</u>. The City of Oshkosh ordinance at issue in this case is presumed to be valid.

> "…the general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Urban Believers, 342 F.3d at 766 (internal quotation omitted), *cited in* Greater Chicago Combine & Ctr., Inc. v. City of Chicago, 431 F.3d 1065, 1072 (7th Cir. 2005)

For all of the Plaintiff's lengthy averments and argument, in effect they make only 3 contentions which challenge the ordinance on the merits, namely: (1) rental inspections that do not require consent or an inspection warrant are unconstitutional (Plaintiff's Motion § 32, 33, 34, 37); (2) rental inspections that are not part of a reasonable regulatory package are unconstitutional (Plaintiff's Motion § 33, 35); (3) the ordinance violates sections 66.0104(2)(d) and (e), 66.0119 and 66.0628, Wisconsin Statutes. Each of these contentions is erroneous.

As to the first of these contentions, the City of Oshkosh ordinance specifically requires consent or a warrant. It says exactly that:

> *"Should the City not be allowed voluntary admittance to a residential rental dwelling unit, the Chief Building Official may proceed to obtain a special inspection warrant pursuant to Wis. Stat. 66.0119."* Section 16-49(C), Oshkosh Municipal Code.

The City seeks voluntary entry and if that is denied, the City seeks an inspection warrant. This is exactly how the City is obligated to proceed because the City cannot get a warrant without first seeking voluntary entry, per Wisconsin Statute Section 66.0119(2):

> *"(2) A peace officer may apply for, obtain and execute a special inspection warrant issued under this section. Except in cases of emergency where no special inspection warrant is required, special inspection warrants shall be issued for inspection of personal or real properties which are not public buildings or for inspection of portions of public buildings which are not open to the public <u>only upon showing that consent to entry for inspection purposes has been refused</u>."*

The Plaintiffs' assertion that the ordinance fails for not requiring a warrant overlooks that before the City can obtain a warrant the City must attempt to gain voluntary entry. Moreover, Wisconsin Statutes Section 66.0104(2)(e)(1) requires the use of the inspection warrant process:

> *"No city, village, town, or county may enact an ordinance that does any of the following: 1. Requires that a rental property or rental unit be inspected except upon a complaint by any person, as part of a program of regularly scheduled inspections conducted <u>in compliance with s. 66.0119, as applicable,</u> or as required under state or federal law."*

This refers back to the same statute that requires the City to attempt to enter with consent. Moreover, this is consistent with the *Camera* U.S. Supreme Court decision cited by the Plaintiffs, in which the court said:

> *"Thus, as a practical matter and in light of the Fourth Amendment's requirement that a warrant specify the property to be searched, it seems likely that <u>warrants should normally be sought only after entry is refused</u> unless there has been a citizen complaint or there is other satisfactory reason for securing immediate entry."* Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 539–40, 87 S. Ct. 1727, 1736, 18 L. Ed. 2d 930 (1967) (emphasis added.)

The City's inspection program is tailored exactly to the foregoing inspection warrant requirements, by first seeking voluntary entry, and then requiring an inspection warrant if access is denied. Plaintiffs' arguments are misplaced, therefore, because the ordinance requires the very thing that they claim is lacking.

The Plaintiffs cite a New York court of appeals case for the contention that the landlord and tenant both have to consent for a search of a protected property interest. (Plaintiff's Motion at Paragraph 36.) One wonders, initially, why Plaintiffs would go so far afield for such a proposition, if it were applicable in Wisconsin. In fact, such is not the case in Wisconsin, at least with respect to building inspection. In Wisconsin, not only can the tenant consent, but it is unlawful for a landlord to evict a tenant due to the tenant's notice to the government of code violations. Wisconsin Administrative Code Section ATCP 134.09. For that matter, even the New

York court of appeals case cited by the Plaintiffs does not support their view. In that case, the ordinance required an owner to consent to an inspection of the property or the owner would be subject to criminal penalties. Sokolov v. Village of Freeport, 52 N.Y.2d 341, 345 (1981). There was absolutely no issue in the case concerning a whether the tenant could consent to the inspection independent of the owner. Why? Because the ordinance required the inspections to be done when the property was vacant. (Id. at 347.) Nothing in the City of Oshkosh ordinance makes the tenant or the landlord criminally liable for refusing to consent to the entry. If the City does not get consent, the City must seek a special inspection warrant, per Section 16-49(C) of the ordinance. The argument made by the Plaintiffs in sections 34 and 36 of their Motion is a red herring.

As to the second of the Plaintiffs' contentions, the City's ordinance is a carefully planned and reasonable regulatory package. The ordinance says in Section 16-49(A) that the City will conduct "a program of regularly scheduled inspections." The City's resolution that implements the program, Resolution 16-489, establishes a 5-year rotation of sections of the City where the inspections will take place, including a map delineating the applicable areas. This directly follows Wisconsin Statutes Section 66.0104(2)(e)(1), quoted above, that requires a program of regularly scheduled inspections. The Plaintiffs cite to *Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 578 (7th Cir. 1999) in support of their claim that there must be a reasonable regulatory scheme. In that case, the regulatory scheme was not contested; the issue was whether the search exceeded what was authorized by the warrant. The case is instructive on this point, however, because the City of Platteville had established a relatively complicated regulatory structure, by assigning properties to various inspection classes, with an inspection frequency of between one and three years depending upon the property classification. The 5-year interval

established by the City of Oshkosh is every bit as reasonable a regulatory scheme, and is much less restrictive, than was involved in the *Platteville* case.

As to the third of the Plaintiffs' contentions, the City's ordinance not only complies, but is narrowly tailored directly to accomplish the purposes described in the statutes cited by the Plaintiffs. The first statute Plaintiffs contend is violated, is § 66.0104(2)(d), Stats.[2], which prohibits requiring Landlords to communicate to tenants or the city in some circumstances. The Plaintiffs do not specify what they believe they are required to communicate to their tenants or to the city, or what part of the ordinance requires it, they only say "the Ordinance violates this provision by requiring landlords to communicate certain information to tenants and to the City." That bald assertion is meritless. Nothing in the ordinance requires such communication. In fact, the only thing specifically listed in the ordinance regarding information provided for registration is a street address, legal name and telephone number for contact information, something that is specifically allowed as an exception in the statute; "information that is solely information that will enable a person to contact the owner or, at the option of the owner, an agent of the owner."

The Plaintiffs next assert that the ordinance violates Wisconsin Statutes § 66.0104(2)(d).[3] This section requires that an inspection program must be regularly scheduled in compliance with

---

[2] The statute reads: *"(d)1.a. No city, village, town, or county may enact an ordinance that requires a landlord to communicate to tenants any information that is not required to be communicated to tenants under federal or state law.*
*b. Subdivision 1.a. does not apply to an ordinance that has a reasonable and clearly defined objective of regulating the manufacture of illegal narcotics. 2. No city, village, town, or county may enact an ordinance that requires a landlord to communicate to the city, village, town, or county any information concerning the landlord or a tenant, unless any of the following applies: a. The information is required under federal or state law. b. The information is required of all residential real property owners. c. The information is solely information that will enable a person to contact the owner or, at the option of the owner, an agent of the owner."*
[3] This section reads: *"(e) No city, village, town, or county may enact an ordinance that does any of the following: 1. Requires that a rental property or rental unit be inspected except upon a complaint by any person, as part of a program of regularly scheduled inspections conducted in compliance with s. 66.0119, as applicable, or as required under state or federal law. 2. Charges a fee for conducting an inspection of*

the statutory inspection warrant process, and the ordinance clearly complies, as is addressed above. This section also imposes certain requirements for inspection fees, all of which are satisfied by the City's inspection fees specified in Resolution 16-489. The fees are uniform, the fee is charged when the inspection is performed, and the re-inspection fee is not more than twice the initial fee. This section also prohibits requiring that a rental property be registered, certified or licensed, and the ordinance does no such thing. While the ordinance requires Landlords to submit certain information, as discussed above, the ordinance is closely tailored to the statute as "the registration consists only of providing the name of the owner and an authorized contact person and an address and telephone number at which the contact person may be contacted." (§ 66.0104(2)(d)(4); Section 16-49(C), Oshkosh Municipal Code.)

The Plaintiffs next assert the ordinance violates Section 66.0119, Wisconsin Statutes, which is the inspection warrant statute. As noted above, the statute specifically requires a "showing that consent to entry for inspection purposes has been refused" as part of the warrant application. This is exactly the framework described in Section 16-49(C) of the ordinance where it says "should the City not be allowed voluntary admittance to a residential rental dwelling unit, the Chief Building Official may proceed to obtain a special inspection warrant pursuant to Wis. Stat. 66.0119."

The last statute cited by the Plaintiffs is section 66.0628 Wisconsin Statutes, which says in substantive part: "Any fee that is imposed by a political subdivision shall bear a reasonable

---

*a residential rental property unless all of the following are satisfied: a. The amount of the fee is uniform for residential rental inspections. b. The fee is charged at the time that the inspection is actually performed. 3. Charges a fee for a subsequent reinspection of a residential rental property that is more than twice the fee charged for an initial reinspection. 4. Except as provided in this subdivision, requires that a rental property or rental unit be certified, registered, or licensed. city, village, town, or county may require that a rental unit be registered if the registration consists only of providing the name of the owner and an authorized contact person and an address and telephone number at which the contact person may be contacted."*

relationship to the service for which the fee is imposed." The Plaintiffs provide no basis for their claim that the statute is violated. For that matter, the Plaintiffs apparently are not aware of the fee, as they contend in paragraph 48 of the Complaint and paragraph 40 of their Motion that no fee has been specified; yet they contend it does not bear a reasonable relationship to the service provided. The fees described in Resolution 16-489 are quite reasonable. While Plaintiffs may develop this argument as their case proceeds, if they choose to pursue that avenue of discovery, in the current posture there is no basis to conclude that the Plaintiffs are likely to show that these fees bear no reasonable relationship to the service provided. Moreover, the statute cited by the Plaintiffs provides a remedy if they believe the fee is excessive, to appeal to the tax appeals commission (Section 66.0628(4), Stats.), and Plaintiffs have not exhausted that remedy.

In sum, there is no basis to conclude that the Plaintiffs are likely to succeed on the merits as they have not cited any reason to believe so. The ordinance at issue in this case is closely tailored to the statutory requirements, at every turn, for the protection of the health, safety and welfare of the City and its residents, and will be upheld.

2. <u>Plaintiffs have adequate remedies at law</u>. The Plaintiffs have ample remedies at law. If a warrant is issued, the Plaintiffs can contest the warrant. If violations are discovered, the Plaintiffs can contest the validity of the claimed violations. If Plaintiffs believe the fees exceed Wisconsin Statutes Section 66.0628, plaintiffs can appeal to the tax appeals commission, per Section 66.0628(4).

3. <u>No irreparable harm</u>. Plaintiffs have failed to explain how they would suffer irreparable harm if the City would enter the property with consent or by warrant. Plaintiffs' sole argument is that entry without consent or warrant violates their constitutional rights. While that may be true in very specific instances, it is irrelevant here. This is a facial challenge, and the ordinance does

not allow such an entry. As consent or warrant is the only way for the City to gain access under the ordinance, Plaintiffs have failed to satisfy this element.

4. <u>The Defendants would suffer more irreparable harm.</u> The City has determined legislatively that it must inspect rental properties to protect the health, safety and welfare of the City and its residents. One need only glance at the State and local news to see that the risks are real. Ninety residents were placed in danger and displaced in an apartment building fire in West Allis on January 7, 2017.[4] Ten residents were displaced and others placed at risk in an apartment building fire in Madison on November 30, 2016.[5] Three hundred residents were displaced and endangered by a four-alarm fire at a Whitewater apartment complex on November 10, 2016.[6] Forty residents were displaced and one person died in a fire in Sheboygan on August 21, 2016.[7] The National Fire Protection Association statistics document this need to ensure that fire alarms are installed and functioning, along with carbon monoxide detectors. (See footnote 1.) These risks place the residents and the responding fire and emergency personnel at risk, along with the surrounding properties, and fire is only one of several health, safety and welfare risks addressed by the ordinance. Also addressed are risks of gas leaks, carbon monoxide poisoning, asphyxiation arising from improper venting, electrocution arising from unsafe wiring, and other readily detected and correctible health and safety risks.

In comparison, Plaintiffs surely do not contend that they are harmed if an inspection discovers defective conditions within the rental properties that must be repaired; but if they do, it is an insignificant risk in comparison.

---

[4] Fox6now.com January 7, 2017
[5] WKOW.com November 30, 2016
[6] Fox6now.com November 10, 2016
[7] Fox6now.com August 21, 2016

5. <u>The preliminary injunction will harm the public interest.</u> The public has a significant interest at stake in this litigation, for protection of the health, safety and welfare. The Common Council is the local governing authority, fully aware of the local circumstances surrounding the condition of rental housing in the City, and charged with protecting its citizens. The Common Council determined this residential rental unit inspection ordinance is necessary "to ensure that those units provide safe, decent and sanitary living conditions for tenants living in the residential dwelling unit and to prevent further deterioration of those units." People die or are injured if the elementary code requirements specified in Resolution 16-489 are not met, as the focus is entirely on such issues as fire alarms, carbon monoxide detectors, proper venting, and the like. We cannot predict when such risks will mature into harm. The City has created a schedule that will allow such units to be routinely inspected, and any delay in implementation could push back the inspection of particular units not only for the time that the case is pending, but possibly for five years if the delay pushes the units into the next cycle. This delay could well translate into tragedy and harm. The injunction must be denied to protect the public interest.

## II. This Case Is Not Ripe for Judicial Review.

The entirety of Plaintiffs' claims amount to hypothetical harm. They are attempting to challenge a city ordinance by alleging theories of anticipatory, preemptive injuries that are based purely in speculation and have no foundation in law. Plaintiffs have suffered no harm and have no reasonable fear of harm regarding the City's ordinance. Not only was it created within the bounds of all applicable laws but plaintiffs have yet to experience any of the impropriety that they allege to face. The Supreme Court has stated that in order to satisfy the threshold requirement of alleging an actual case or controversy, plaintiff is bound to demonstrate a personal stake in the outcome, and abstract injury was not enough but, rather, plaintiff was bound to show that he had sustained

or was immediately in danger of sustaining some direct injury as result of the challenged official conduct and the injury or threat of injury was required to be both real and immediate, not conjectural or hypothetical. *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Additionally, if none of the plaintiffs purporting to represent a class meets the case or controversy requirement, none may seek relief on behalf of himself or any member of the class. *O'Shea v. Littleton*, 414 U.S. 488 (1974). Even past exposure to illegal conduct does not in itself show a present case or controversy requiring injunctive relief if unaccompanied by any continuing, present adverse effects. *Id*. In our case at hand, not only is there no present harm but there has been no past harm either. Without any showing of harm to the Plaintiffs, this case is not ripe for judicial review, proving that injunctive relief would be inappropriate at this time.

## CONCLUSION

The preliminary injunction must be denied. The Plaintiff must show five elements which warrant the grant of a preliminary injunction, and has failed to show any of them. The Plaintiffs will not succeed on the merits; the Plaintiffs have adequate remedies at law; Plaintiffs will not suffer irreparable harm if the preliminary injunction is denied; the harm the Plaintiffs would suffer without injunctive relief is not greater than the harm the Defendants would suffer if the preliminary injunction is granted; and the preliminary injunction would harm the public interest. For all the reasons set forth herein, the City of Oshkosh, the City of Oshkosh Common Council and John Zarate request that the Court enter an order denying plaintiff's motion for temporary injunction.

Dated this 7th day of February, 2017.

**ARENZ, MOLTER, MACY,
RIFFLE & LARSON, S.C.**

Attorneys for Defendants, City of Oshkosh, City of Oshkosh Common Council and John Zarate

By: /s/ Samantha R. Schmid
    REMZY D. BITAR
    State Bar No: 1038340
    SAMANTHA R. SCHMID
    State Bar No: 1096315

P.O. ADDRESS:
720 N. East Avenue
Waukesha, WI 53186
O: (262) 548-1340
F: (262) 548-9211
E: rbitar@ammr.net
sschmid@ammr.net