UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WINNEBAGO APARTMENT ASSOCIATION, INC. et al,

    Plaintiffs,

v.                                                 Case No. 17-C-154

CITY OF OSHKOSH et al,

    Defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Winnebago Apartment Association and several apartment owners and tenants in the City of Oshkosh commenced this action in state court on January 13, 2017, seeking a declaration that the Defendant City's newly enacted ordinance establishing a residential rental contact registration and inspection program violates the Fourth Amendment to the United States Constitution by authorizing inspections of apartment buildings and residential rental properties without a warrant and without the consent of the individuals in lawful possession. Plaintiffs also sought a declaration that Oshkosh, Wis. Mun. Code §§ 16-47–16-51 ("the Ordinance") violates several state laws governing municipal regulation of rental housing. Asserting federal question jurisdiction under 28 U.S.C. § 1331, the City removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1446. The case is currently before the court on the Plaintiffs' motion for a preliminary injunction to enjoin Oshkosh from enforcing the ordinance. For the reasons below, Plaintiffs' motion is denied.

## BACKGROUND

On June 28, 2016, the Oshkosh Common Council introduced a proposed ordinance to establish a program for the registration and inspection of residential rental dwelling units in the City. (ECF No. 9-1 at ¶ 4.) Despite objections raised by Plaintiffs, the Common Council adopted the Ordinance on September 15, 2016 as Sections 16-47–16-51 of Division 6 of the City Ordinances. (*Id.* at ¶ 6.) In enacting the Ordinance, the Common Council made several findings:

> The Oshkosh Common Council finds that it is necessary to establish a program of regularly scheduled, systemic, city-wide program for the registration and inspection of residential rental dwelling units in the city to ensure that those units provide safe, decent and sanitary living conditions for tenants living in the residential dwelling unit and to prevent further deterioration of those units. The Common Council finds that a significant percentage of code complaints and violations occur at residential rental dwelling units and that the conditions which exist at these units adversely affect the neighbors and neighborhoods in which they are located. This ordinance is enacted to encourage property owners who own and operate residential rental dwelling units to exercise their responsibility to ensure that the city ordinances governing the condition and maintenance of residential rental dwelling units are followed to protect the health, safety and welfare of the public and prevent blighted conditions in city neighborhoods.

Oshkosh, Wis. Mun. Code § 16-47.

Based upon these findings and in consideration of the health, safety and welfare concerns for its residents, the Ordinance requires all owners of residential rental dwelling units located in the City to annually record residential rental contact information for each rental unit with the City by September 1 or within 30 days of any sale, transfer or conveyance of the unit. § 16-48(A). The contact information consists of the name and telephone number and/or email address of the owner or owner's agent and the street address of the rental dwelling unit to be registered. § 16-48(B). The City's Division of Inspections is then tasked with conducting inspections of each unit over a five-year cycle. The Ordinance provides that the Department conducting the inspections is to schedule

appointments for residential rental unit inspections and send a notice by first class mail to the tenant and owner at the address provided in the residential rental contact registration form at least 21 days before the scheduled inspection date. § 16-49(B). The Ordinance further provides, however, that inspections shall not be conducted without prior notice to the tenant; nor can an inspection be conducted in an occupied dwelling unit without the owner, owner's agent, or tenant being present. § 16-49(C). In the event the inspector is not allowed voluntary admittance to the unit, the Ordinance states that "the Chief Building Official may proceed to obtain a special inspection warrant pursuant to Wis. Stat. 66.0119." *Id.* Section 66.0119(2) of the Wisconsin Statutes provides for the issuance of special inspection warrants to public officers who are charged under state statutes or municipal ordinances to conduct inspections of real or personal property "upon a showing that consent or entry for inspection purposes has been denied."

In addition to the periodic inspections required under the new program established by the Ordinance, all residential rental dwelling units remain subject to inspection upon request or complaint by a citizen or tenant. § 16-49(F). To pay for the program, the Department is to charge a fee for each residential rental unit inspection as approved by a fee schedule adopted by the Common Council. § 16-49(E). By resolution adopted on October 11, 2016, the Common Council approved an inspection fee schedule, an inspection checklist, and a map showing the areas of the City in which the residential rental units would be inspected in each year of the five-year cycle. (ECF No. 12.) The checklist includes thirty separate categories of items to be inspected, including smoke and CO alarms; the plumbing system and fixtures; electrical switches, receptacles and fixtures; doors; windows; furnace, water heater; and clothes dryer. (ECF No. 12, at 6.) Inspection fees consist of a trip charge of $100 plus $45 per unit inspected, which is expected to cover the anticipated costs

to the City of $250,000 per year. (ECF No. 12, at 7.)

Plaintiffs contend that the Ordinance violates the Fourth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, because it does not require an inspection warrant to be issued prior to conducting inspections in residential rental dwelling units. For this violation, Plaintiffs seek relief under 42 U.S.C. § 1983. Plaintiffs also contend that the Ordinance does not comply with the provisions of Section 66.0104(2)(d) and (e), Section 66.0119, or Section 66.0628 of the Wisconsin Statutes, which place restrictions on the ability of municipalities to regulate rental housing. In addition to a declaration that the Ordinance violates Plaintiffs' Fourth Amendment rights and the cited state statutes, the complaint seeks to permanently enjoin the City from implementing and enforcing the Ordinance, an award of costs and attorney fees under 42 U.S.C. § 1988, and such other relief as the court deems just and equitable. Along with their complaint, Plaintiffs also filed a motion for a preliminary injunction in order to maintain the status quo and prevent irreparable harm to them during the pendency of the action. A hearing on the Plaintiffs' motion was held on February 8, 2017. At that time, the City stated that the inspection program is scheduled to commence on February 15, 2017.

## ANALYSIS

"A preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quotation omitted); *see also Kiel v. City of Kenosha*, 236 F.3d 814, 815–16 (7th Cir. 2000). A party seeking a preliminary injunction must demonstrate that (1) it has a reasonable likelihood of success on the merits; (2) no adequate remedy at law exists; (3) it will suffer irreparable harm if the preliminary injunction is denied; (4) the irreparable harm the party

4

will suffer without injunctive relief is greater than the harm the opposing party will suffer if the preliminary injunction is granted; and (5) the preliminary injunction will not harm the public interest. *Id.* When a court finds that the party seeking preliminary relief is unlikely to succeed on the merits, it need not address the other requirements.

Plaintiffs argue that the Ordinance violates their Fourth Amendment rights and is unconstitutional on its face. Facial invalidation of an ordinance is a generally disfavored remedy and should only be employed sparingly as a last resort. *See Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 580 (1998) ("Facial invalidation 'is, manifestly, strong medicine' that 'has been employed by the Court sparingly and only as a last resort.'") (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 613 (1973)). "A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *see also Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008) ("Under *United States v. Salerno*, . . . a plaintiff can only succeed in a facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' i.e., that the law is unconstitutional in all of its applications."). In other words, if the ordinance as written can be applied constitutionally, then it is not facially invalid.

The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend IV. "The basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals

against arbitrary invasions by governmental officials. The Fourth Amendment thus gives concrete expression to a right of the people which 'is basic to a free society.'" *Camara v. Mun. Court of City & Cnty. of San Francisco*, 387 U.S. 523, 528 (1967) (quoting *Wolf v. Colorado*, 338 U.S. 25, 27 (1949)). In light of these principles, the Court held in *Camara* that even entry of a premises by government officials for the limited purpose of conducting an inspection pursuant to a program designed to protect the public from health and safety code violations requires either consent of the person in lawful possession or a warrant issued by a judge. *Camara*, 387 U.S. at 534.

The Court also held in *Camara*, however, that the showing required to obtain a warrant for such a limited purpose is significantly less than the probable cause standard that applies when law enforcement seek to obtain a warrant authorizing a search for evidence of a crime. "Where considerations of health and safety are involved, the facts that would justify an inference of 'probable cause' to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken." *Id.* at 538. Under *Camara*, the mere passage of time is enough to establish the probable cause required for an inspection warrant if the inspection is performed pursuant to a reasonable regulatory program designed to safeguard public health and safety by insuring compliance with applicable codes. *Id.* at 537–38; *see also Platteville Area Apartment Ass'n v. City of Platteville*, 179 F.3d 574, 578 (7th Cir. 1999) ("In these circumstances the Fourth Amendment's requirement that all search warrants be supported by 'probable cause' can be satisfied by demonstrating the reasonableness of the regulatory package that includes compulsory inspections . . . .).

In seeking to preliminarily enjoin enforcement of the Ordinance, Plaintiffs have not argued here that the Ordinance is unconstitutional because the inspection program it implements is

unreasonable. Instead, Plaintiffs contend that the Ordinance is unconstitutional because it authorizes inspection of residential rental units without first obtaining either the consent of the tenant or a warrant. In support of their argument, Plaintiffs point to a section of the Ordinance which states in part: "Inspections shall not be conducted:

 (1) With a minor as the sole representative of the owner.

 (2) Without prior notice to the tenant by the Department.

 (3) In an occupied dwelling without the owner, owner's agent, or tenant being present.

§ 16-49(C). Plaintiffs argue that because the Ordinance does not explicitly require the consent of the tenant or a warrant prior to the inspection, it is violates their rights under the Fourth Amendment.

The above quoted language does not say that an inspector can enter an apartment without the consent of the tenant or a warrant. It instead prohibits entry unless the tenant has been given notice and the tenant, owner or adult representative of the owner is present. Moreover, the last sentence of § 16-49(C) of the Ordinance makes clear that either consent or a warrant is needed for entry. It reads: "Should the City not be allowed voluntary admittance to a residential rental dwelling unit, the Chief Building Official may proceed to obtain a special inspection warrant pursuant to Wis. Stat. 66.0119."

At the hearing, Plaintiffs argued that by not requiring that the tenant be present at the time of inspection the Ordinance created a risk that the owner/landlord could consent for the tenant. But under Wisconsin law, landlords are authorized "upon advance notice and at reasonable times [to] inspect the premises . . . ." Wis. Stat. § 704.05(2). Since the Ordinance requires that the tenant also receive the 21 day notice of date and time of inspection, it is doubtful that the tenant would have

7

grounds under Wisconsin law to object to the owner/landlord allowing entry for the required inspection. In the event the tenant does object and denies entry, however, the Ordinance clearly requires that a special inspection warrant be sought under Section 66.0119 of the Wisconsin Statutes, which requires a showing that consent for entry has been refused in order for the warrant to be issued. Wis. Stat. § 66.0119(2).

It is true that an inspector could nevertheless proceed to enter an apartment under the Ordinance without obtaining proper consent or a warrant. But this is not enough to show that the Ordinance is facially invalid. It is also noteworthy that the City has indicated an intent to amend the ordinance prior to its implementation to make even more clear the need to obtain consent from the person in lawful possession of the premises or a warrant before entry can be made. (ECF No. 14-1.) Under these circumstances, I conclude that Plaintiffs are unlikely to prevail on their Fourth Amendment claim. And although they have also alleged that the Ordinance does not comply with certain state statutes limiting municipal authority to regulate landlords, they have failed to make any showing of a likelihood of success on the merits as to those claims as well. I therefore conclude that the required showing for the preliminary relief Plaintiffs seek has not been made. Their motion for a preliminary injunction must therefore be denied.

**SO ORDERED** at Green Bay, Wisconsin this __13th__ day of February, 2017.

                               s/ William C. Griesbach
                               William C. Griesbach, Chief Judge
                               United States District Court